1  RICK D. ROSKELLEY, ESQ., Bar # 3192
   CORY G. WALKER, ESQ., Bar # 12121
2  KRISTINA ESCAMILLA GILMORE, ESQ., Bar # 11564
   LITTLER MENDELSON, P.C.
3  3960 Howard Hughes Parkway
   Suite 300
4  Las Vegas, NV 89169-5937
   Telephone:    702.862.8800
5  Fax No.:      702.862.8811

6  Attorneys for Defendants
   Vision Drywall & Paint, LLC, Burke Construction Group, Inc.,
7  Richmond American Homes of Nevada, Inc., Harmony Homes, Inc.,
   KB Home Las Vegas, Inc., KB Home Nevada, Inc., Desert Wind
8  Homes of Nevada, II, Inc., Las Vegas Land Contracting, LLC dba
   Dunhill Homes, Javier Bernal Rodriguez and Manuel Rodolfo
9  Rodriguez

10                  **UNITED STATES DISTRICT COURT**

11                        **DISTRICT OF NEVADA**

12  Oscar Almaraz, Efren Gonzalez, and Ismael        Case No. 2:11-cv-01983-PMP-PAL
    Perez Cruz, individually and on behalf of other
13  persons similarly situated,

14              Plaintiff,

15  vs.                                              **BURKE CONSTRUCTION GROUP,
                                                     INC.'s, RICHMOND AMERICAN
16  Vision Drywall & Paint, LLC, Javier Bernal       HOMES OF NEVADA, INC.'s,
    Rodriguez, Manuel Rodolfo Rodriguez, Las         HARMONY HOMES, INC.'s, KB
17  Vegas Land Contracting, LLC dba Dunhill          HOME LAS VEGAS, INC.'s, KB HOME
    Homes, Burke Construction Group, Inc.,           NEVADA, INC.'s, DESERT WIND
18  Richmond American Homes of Nevada, Inc.,         HOMES OF NEVADA, II, INC.'s, AND
    Harmony Homes, Inc., Desert Wind Homes of        LAS VEGAS LAND CONTRACTING,
19  Nevada II, Inc. dba Russell Rogers               LLC DBA DUNHILL HOMES'
    Development, KB Home Las Vegas, Inc., KB          MOTION FOR SUMMARY
20  Home Nevada, Inc., and Does 1-10,                JUDGMENT**

21              Defendant.

22

23          Las Vegas Land Contracting LLC dba Dunhill Homes; Burke Construction Group, Inc.;

24  Richmond American Homes of Nevada, Inc.; Harmony Homes, Inc.; Desert Wind Homes of Nevada

25  II, Inc. d/b/a Russell Rogers Development; KB Home Las Vegas, Inc.; and KB Home Nevada, Inc.

26  (referred to collectively as "GC Defendants", short for General Contractor Defendants, or

27  individually as appropriate), by and through their counsel, hereby submit this Motion for Summary

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1  Judgment as to the General Contractors.  This Motion is made and based upon the following

2  Memorandum of Points and Authorities, exhibits filed herewith, and any oral argument permitted by

3  the Court.

4  **I.      INTRODUCTION**

5          Named Plaintiffs[1], Oscar Almaraz and Ismael Perez, filed a class action against Vision

6  Drywall & Paint, LLC ("Vision"), Javier Bernal Rodriguez; Manuel Rodolfo Rodriguez, and GC

7  Defendants asserting state and federal unpaid wage claims in their Complaint.  With regard the

8  Federal unpaid wage claims, Named Plaintiffs and Opt-in Plaintiffs (collectively referred to as

9  "Plaintiffs") allege that the GC Defendants are liable for violations of the FLSA because they were

10  joint employers with Vision and accordingly are liable for Vision's alleged failure to pay overtime

11  under the Fair Labor Standards Act ("FLSA").   GC Defendants deny that any form of an

12  employment relationship existed with Plaintiffs, and therefore deny any liability associated with

13  Plaintiffs' alleged FLSA violations.

14          With their unfounded legal equivalent of grasping at straws, Plaintiffs' theory here proposes

15  to stand the very fundamental principles of independent contracting entities on their head.  Plaintiffs

16  do not set forth any evidence that would give rise to liability for the GC Defendants under a "joint

17  employer" theory of liability.  Indeed, the record clearly demonstrates that the GC Defendants had

18  no relationship with the Plaintiffs whatsoever:  the GC Defendants did not have the power to hire or

19  fire the Plaintiffs; the GC Defendants did not supervise or control the work schedules or conditions

20  of the Plaintiffs' employment; the GC Defendants did not determine Plaintiffs' rate and method of

21  payment; and the GC Defendants did not maintain any employment records for the Plaintiffs.  In

22  short, the GC Defendants exerted no employer-like control whatsoever on Plaintiffs, a fact Plaintiffs

23  apparently hope this Court will simply ignore.  As a result of Plaintiffs having come in contact with

24  GC Defendants under circumstances that could not allow the GC Defendants to be considered

25  Plaintiffs' employers, Plaintiffs have only their unsupported speculation and unfounded legal

26  arguments to support their joint-employer theory, neither of which can help them withstand

27  _____

28  [1] Since the time of conditional certification Plaintiff Gonzalez and four opt-in plaintiffs have decided not to pursue this litigation, voluntarily dismissing their claims with prejudice.

LITTLER MENDELSON, P C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800

summary judgment.

The Court denied class action status of the state law claims but certified a collective action with respect to Named Plaintiffs' federal claims. Accordingly, only the Named Plaintiffs have state law claims against the GC Defendants. With regard to the state law claims, Named Plaintiffs claim that the GC Defendants are liable for unpaid wages under state law pursuant to Nevada Revised Statute ("NRS") § 608.150, which makes an original contractor liable for the labor related debts of its subcontractor. GC Defendants deny any liability pursuant to § 608.150 because there is no evidence showing that Named Plaintiffs worked on one of their projects more than 40 hours per week or were paid less than minimum wage on one their projects.

While NRS § 608.150 makes an original contractor liable for the labor related debts of its subcontractor, that liability extends only to those debts which are specifically attributable to labor performed by the subcontractor under the particular original contractor's contract. Thus, in order to prevail, Named Plaintiffs must be able to show that their claims are, in fact, attributable specifically to work done for a particular general contractor and must also be able to show the extent thereof. This is the fatal flaw in Named Plaintiffs' NRS § 608.150 claims. There is absolutely no evidence to support the fact that any labor related debts were incurred on the projects of any particular general contractor. Discovery in this matter is complete and there is simply no evidence to establish that any particular general contractor is liable for any specific portion of what Named Plaintiffs claim they are owed in labor related debt. Accordingly, Named Plaintiffs have failed to establish any genuine issue of material fact indicating that the GC Defendants could rightly be held liable for any labor related debt pursuant to NRS § 608.150.

Because both theories of general contractor liability in this matter must fail, summary judgment should be granted in favor of the GC Defendants.

Additionally, two of the Opt-in Plaintiffs, Jaime Magallanes-Munoz and Francisco Cervantes, have not filed consent forms as required under the FLSA. As such, the Court should dismiss them from this lawsuit, with prejudice, for failure to timely file consents to join this lawsuit.

. . .

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

3.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed a class action/collective action Complaint on December 9, 2011, alleging the following claims against Vision; Javier Bernal Rodriguez; Manuel Rodolfo Rodriguez; and GC Defendants: (1) collective action for failure to pay minimum wage pursuant to the FLSA; (2) collective action for failure to pay overtime pursuant to the FLSA; (3) class action claim to recover wages under NRS § 608.250; (4) class action claim to recover unpaid overtime under NRS § 608.018; (5) class action claim to recover waiting-time penalties under NRS § 608.040(1) and NRS § 608.050; and (6) class action claim for breach of contract/quasi-contract.

On January 3, 2012, Vision and GC Defendants filed a Motion to Dismiss, requesting, among other things, that the state law aspect of Named Plaintiffs' class claims should be dismissed. Docket No. 8 and 10. The Court agreed, and on March 6, 2012 it dismissed the class action aspect of Named Plaintiffs' state law claims. Docket No. 23. As a result, only the Named Plaintiffs, Oscar Uriel Almaraz Luna and Ismael Perez Cruz, have unpaid wage state law claims pursuant to NRS § 608.150 against the GC Defendants – the Opt-in Plaintiffs do not have any state causes of action against the GC Defendants. Docket No. 23. On June 22, 2012, the Court granted Plaintiffs' Motion for Conditional Certification of an opt-in class pursuant to section 16(b) of the FLSA. Docket No. 41. The Plaintiffs can only hold the GC Defendants liable for FLSA violations if they can establish the presence of a joint employer relationship with Vision's employees, which they cannot do.

Presently, there are twenty Opt-in Plaintiffs and two Named Plaintiffs in this case. However, two of the Opt-in Plaintiffs have not filed consent forms to participate in the collective-action, and therefore are not properly included in this lawsuit.[2] On October 16, 2012, Magistrate Judge Leen limited Vision's and the GC Defendants' discovery with relation to the Opt-in Plaintiffs to ten three-

---

[2] Plaintiffs filed the Sixth Notice of Filing Opt-In Consent Forms on October 10, 2012. See **Exhibit A**, Docket No. 63. This Notice represented that Carlos Santiago Ventura, Miguel Corona, Rolando Fernandez, Cruz Rodriguez, Raul de la Cruz Rodriguez, Jaime Magallanes-Munoz, Francisco Cervantes, Victor Saucedo-Ortego, Esteban Miranda Contreras, Eduardo Hernandez Contreras, Joel Solis, Isais Diaz, Jaime Barraza, Jose Garcia Cruz, German Bravo Martinez, and Eric Demha were filing their consent forms to participate in this collective action lawsuit. Upon review of the attached consents, there was not a consent form attached signed by either Jaime Magallanes-Munoz or Francisco Cervantes. Rather, there were two consent forms that merely contained a date and no signature, making it impossible to identify an individual associated with those unsigned consent forms. See pages 5 and 12 of Docket No. 63. To date, there is no record of Jaime Magallanes-Munoz and Francisco Cervantes having filed signed consent forms to participate in this litigation.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

4.

hour depositions.  Docket No. 65.  Defendants were further limited with regard to written discovery addressed to Opt-in Plaintiffs.  *Id.*  Defendants deposed both Named Plaintiffs and ten Opt-in Plaintiffs.  Plaintiffs deposed all seven GC Defendants' 30(b)(6) representatives,[3] and have propounded Requests for Production and Interrogatories to which GC Defendants timely responded. Discovery closed in this case on January 29, 2013.  Docket No. 48.

## III.   STATEMENT OF UNDISPUTED FACTS

The undisputed material facts in this case conclusively establish that no joint employer relationship exists between any of the GC Defendants and the Plaintiffs.  It is undisputed that Named Plaintiffs are unable to show they accrued any of their alleged overtime hours, or claims to minimum wage, while working on the job site, or under the labor contract, of any of the GC Defendants. Accordingly, summary judgment should be entered in favor of the GC Defendants.

### A.   Undisputed Facts Related To Plaintiffs' FLSA Claims Against GC Defendants Based Upon The Theory Of Joint Employer Liability.

The following undisputed facts clearly demonstrate that GC Defendants have absolutely no employment relationship with Plaintiffs and are not Plaintiffs' joint employer with Vision,

- GC Defendants did not have the power to hire and fire Plaintiffs.[4]

. . .

. . .

---

[3] Plaintiff conducted the 30(b)(6) representative of KB Home Nevada, Inc. and KB Home Las Vegas, Inc. in one deposition.

[4] **Exhibit B**, Deposition of Oscar Uriel Almaraz Luna ("Almaraz Dep.") at 152:5-10; **Exhibit C**, Deposition of Ismael Perez Cruz ("Perez Dep.") at 107:11-17; **Exhibit D**, Deposition of Jose Garcia Cruz ("Garcia Cruz Dep.") at 91:5-6; 91:20-21; **Exhibit E**, Deposition of Jose Palacio ("Palacio Dep.") at 86:10-15; 87:5-11; **Exhibit F**, Deposition of Raul de la Cruz Rodriguez ("de la Cruz Dep.") at 68:12-15;  **Exhibit G**, Deposition of German Bravo Martinez ("Bravo Dep.") at 57:4-10, 23-25; **Exhibit H**, Deposition of Erik Demha Roque ("Demha Dep.") at 72:11-13; 75:17-25; 76:1-9; **Exhibit I**, Deposition of Joel Solis ("Solis Dep.") at 68:23-25; 69:1-4; **Exhibit J**, Deposition of Jamie Barraza ("Barraza Dep.") at 75:16-25; **Exhibit K**, Deposition of Porfirio Pamplona Santos ("Pamplona Dep.") at 83:21-25; 84:1-8; **Exhibit L**, Deposition of Jamie Magallenes-Munoz ("Magallenes-Munoz Dep.") at 70:23-25; 71:1-6; 71:10-12; **Exhibit M**, Deposition of Christian Lomeli ("Lomeli Dep.") at 82:21-25, 83:15-18, 25; 84:1-3; **Exhibit N**, Declaration of Burke Construction Group, Inc. ("Burke Dec.") at ¶5; **Exhibit O**, Declaration of Dunhill Homes ("Dunhill Dec.") at ¶6; **Exhibit P**, Declaration of Harmony Homes Inc. ("Harmony Dec.") at ¶6; **Exhibit Q**, Declaration of Richmond American Homes of Nevada, Inc. ("Richmond Dec.") at ¶6; **Exhibit R**, Declaration of KB Home ("KB Home Dec.") at ¶6; **Exhibit S**, Declaration of Desert Wind Homes of Nevada II, Inc. ("Desert Wind Dec.") at ¶6.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

- GC Defendants did not supervise or control the work schedules or conditions of Plaintiffs' employment with Vision.[5]

- GC Defendants did not supervise or control the performance Plaintiffs' employment.[6]

- GC Defendants did not maintain any employment records for the Plaintiffs.[7]

- GC Defendants did not provide any supplies or equipment for the Plaintiffs.[8]

**B.     Undisputed Facts Related To Named Plaintiffs' State Law Claims Against GC Defendants Pursuant To N.R.S. § 608.150.**

The following undisputed facts show that Named Plaintiffs cannot demonstrate that they accrued any of their alleged overtime hours, or claims to minimum wage, while working on the job site (also referred to throughout as a "project"), or under the labor contract, of any of the GC Defendants:

- Named Plaintiffs are unable to identify all of the projects that the worked on during their employment with Vision.[9]

. . .

---

[5] **Exhibit B**, Almaraz Dep. at 150:23-25; 153:3-6; **Exhibit C**, Perez Dep.at 107:11-25; 109:11-12, 22-23; **Exhibit D**, Garcia Cruz Dep. at 91:5-9; **Exhibit E**, Palacio Dep. at 86:10-15; 87:2-4, 12-14; **Exhibit F**, de la Cruz Dep. at 68:12-15; 67:7-25; **Exhibit G**, Bravo Dep. at 57:4-22; **Exhibit H**, Demha Dep. at 72:11-16; 72:23-25; 73:1-8; **Exhibit I**, Solis Dep. at 68:23-25; 69:1-12; **Exhibit J**, Barraza Dep. at 75:16-25; **Exhibit K**, Pamplona Dep. at 83:21-25; 84:1-12; **Exhibit L**, Magallenes-Munoz Dep. at 70:23-25; 71:1-9, 16-22, 72:1-3; **Exhibit M**, Lomeli Dep. at 82:21-25, 83:15-18, 84:4-9; **Exhibit N**, Burke Dec. at ¶6; **Exhibit O**, Dunhill Dec. at ¶7; **Exhibit P**, Harmony Dec. at ¶7; **Exhibit Q**, Richmond Dec. at ¶7; **Exhibit R**, KB Home Dec. at ¶7; **Exhibit S**, Desert Wind Dec. at ¶7.

[6] **Exhibit B**, Almaraz Dep. at 150:23-25; **Exhibit C**, Perez Dep.at 107:11-25; 109:11-12, 22-23; **Exhibit D**, Garcia Cruz Dep. at 91:5-9;91:23-25; 92:1; **Exhibit E**, Palacio Dep. at 86:10-15; **Exhibit F**, de la Cruz Dep. at 68:12-15; 67:7-25; **Exhibit G**, Bravo Dep. at 57:4-10; **Exhibit H**, Demha Dep. at 72:11-22; 72:23-25; 73:1-8; **Exhibit I**, Solis Dep. at 68:23-25; 69:1-4; **Exhibit J**, Barraza Dep. at 75:16-25; **Exhibit K**, Pamplona Dep. at 83:21-25; 84:1-23; **Exhibit L**, Magallenes-Munoz Dep. at 70:23-25; 71:1-9, 23-25; **Exhibit M**, Lomeli Dep. at 82:21-25, 83:15-18, 83:25, 84:1-6; **Exhibit N**, Burke Dec. at ¶7; **Exhibit O**, Dunhill Dec. at ¶8; **Exhibit P**, Harmony Dec. at ¶8; **Exhibit Q**, Richmond Dec. at ¶7; **Exhibit R**, KB Home Dec. at ¶8; **Exhibit S**, Desert Wind Dec. at ¶8.

[7] **Exhibit N**, Burke Dec. at ¶8; **Exhibit O**, Dunhill Dec. at ¶9; **Exhibit P**, Harmony Dec. at ¶9; **Exhibit Q**, Richmond Dec. at ¶9; **Exhibit R**, KB Home Dec. at ¶9; **Exhibit S**, Desert Wind Dec. at ¶9.

[8] **Exhibit B**, Almaraz Dep. at 148:4-17; **Exhibit C**, Perez Dep. at 107:5-10; **Exhibit D**, Garcia Cruz Dep. at 90:7-25; 91:5-6; **Exhibit E**, Palacio Dep. at 86:25; 86:1-9; **Exhibit F**, de la Cruz Dep. 68:12-15; **Exhibit G**, Bravo Dep. at 57:23-25; **Exhibit H**, Demha Dep. at 75:17-25; 76:1-9; **Exhibit I**, Solis Dep. at 68:12-22; **Exhibit J**, Barraza Dep. at 74:23-25; 75:1-12; **Exhibit K**, Pamplona Dep. at 67:17-25; 83:21-25; 84:1-8; **Exhibit L**, Magallenes-Munoz Dep. at 70:14-22; **Exhibit M**, Lomeli Dep. at 83:11-14; **Exhibit N**, Burke Dec. at ¶9; **Exhibit O**, Dunhill Dec. at ¶10; **Exhibit P**, Harmony Dec. at ¶10; **Exhibit Q**, Richmond Dec. at ¶10; **Exhibit R**, KB Home Dec. at ¶10; **Exhibit S**, Desert Wind Dec. at ¶10.

[9] **Exhibit B**, Almaraz Dep. at 102:15-22; 114:2-19.  **Exhibit C**, Perez Dep. at 71:21-27; 72:1-25; 73:1-4; 93:17-20.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

- Named Plaintiffs are unable to recall when or for how long they worked on particular projects.[10]

- Named Plaintiffs testified that it was common to work on different projects within the same week, and sometimes even within the same day.[11]

- Named Plaintiffs worked on projects that were not projects of any of the GC Defendants while working for Vision.[12]

- Named Plaintiffs admit that there were periods where work was slow and they did not work more than 40 hours in a workweek.[13]

## IV.   STANDARD OF REVIEW

One of the principal purposes of a summary judgment motion is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules of Civil Procedure which are designed "to secure the just, speedy, and inexpensive determination of every action." *Id.* at 327. Summary judgment must be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(e). Accordingly, a party opposing summary judgment cannot simply rest on the pleadings, but must provide sufficient evidence that would allow a reasonable trier of fact to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Pursuant to this standard, the burden of the party seeking summary judgment is satisfied by a showing that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477

---

[10] **Exhibit B**, Almaraz Dep. at 113:6-10; 133:23-25; 134:1-5; 140:11-25; 141:1-14; 143:7-9. **Exhibit C**, Perez Dep. at 66:12-25; 67:1-4; 71:21-25; 72:1-23; 74:21-25; 75:1-13; 76:9-20; 80:12-25; 81:1-11; 84: 19-21; 88:13-23.

[11] **Exhibit B**, Almaraz Dep. at 106:1-15; 107:1-2; 113:19-21; 118:13-21. **Exhibit C**, Perez Dep. at 73:25; 74:1-7.

[12] **Exhibit B**, Almaraz Dep. at 105:3-25; 106:10-17; 109:22-23; 134:24; 143:5. **Exhibit C**, Perez Dep. at 73:1-25; 74:1-4.

[13] **Exhibit B**, Almaraz Dep. at 116:13-25; 124:19-25. **Exhibit C**, Perez Dep. at 12:1-3; 70:13-25; 71:1-20; 86:24-25; 87:1; 94:13-22; 100:16-25; 101:4-9; 99:22-24.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

7.

U.S. at 325.  The burden then shifts to the non-moving party to show specific facts of a genuine issue for trial.  *Id.* at 332; *see also, California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 247.  Further, the self-serving statements of Plaintiffs made in contradiction to their deposition testimony should not be attributed weight by this Court and cannot establish a material issue of fact of purposes of summary judgment.  *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (refusing to consider plaintiff's affidavit that contradicted his own deposition testimony); *Balding-Margolis v. Cleveland Arcade,* 2009 U.S. App. LEXIS 24604 at *9-11 (6th Cir. Nov. 9, 2009) (affirming district court's decision to strike post-deposition affidavit that directly conflicted with plaintiff's deposition testimony).  The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Franciscan Ceramics, Inc.*, 818 F.2d at 1468.

## V.   LEGAL ARGUMENT

### A.   The Plaintiffs Cannot Show That GC Defendants Are Not Joint Employers.

Any claim based on such a theory that the GC Defendants were Plaintiffs' joint employers must fall to summary judgment as Plaintiffs have failed to present evidence that establishes that the GC Defendants exercised any employer-like control over Plaintiffs.  As indicated above, the FLSA does not apply in the absence of an employer-employee relationship.  *See, e.g., Patel v. Wargo*, 803 F.3d 632, 637 (11th Cir. 1986).  Indeed, an employer is only responsible to pay "each of *his* employees" overtime for hours worked in excess of forty hours.  29 U.S.C. § 207(a)(1) (emphasis added).  "There is no suggestion in the language of the statute that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship." *Patel*, 803 F.3d at 637.  Thus, in order prevail on a claim for relief under the FLSA, it is necessary for Plaintiffs to prove that the GC Defendants were Plaintiffs' employers.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

8.

The evidence of this matter demonstrates that the GC Defendants cannot be held liable for FLSA violations under a "joint employer" theory of liability. *See, Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Under the "economic reality" test used to determine whether two or more entities are "joint employers" under the FLSA, courts in the Ninth Circuit examine the "total employment situation" and the "economic realities of the work relationship" and consider the following factors: (1) whether the putative employer had the power to hire and fire the worker; (2) whether the putative employer supervised and controlled work schedules or conditions of employment of the worker; (3) whether the putative employer determined the rate and method of payment of the worker; and (4) whether the putative employer maintained employment records of the worker. *Id.*

Here, Plaintiffs' Complaint alleges, with regard to all GC Defendants, only that they "oversaw Plaintiffs' work on jobsites," established overall production schedules, and monitored daily progress. *See*, Plaintiffs' Complaint ¶¶ 42-55. Plaintiffs underline the absurdity of their joint-employer claims against the GC Defendants by frequently referring to themselves only as the employees of Vision Drywall, acknowledging that, as alleged employees of Vision Drywall they performed their work "at" construction sites of general contractors, not as employees of those contractors. *See e.g.*, Plaintiffs' Complaint ¶ 4. (Plaintiffs . . . are current and former employees of Vision Drywall & Paint, LLC . . . . Plaintiffs . . . have worked for Defendant Vision Drywall & Paint as drywall hangers and tapers, and painters . . . . Plaintiffs performed this work at construction projects . . . ."). Moreover, Plaintiffs own testimony contradicts the allegations in their Complaint. Named Plaintiffs' testimony evidences that Plaintiffs do not interact with the GC Defendants and do not consider them their employers.

While a general contractor may have overseen a particular project in a general sense, it is clear that Plaintiffs understood themselves to be under the supervision of Vision Drywall employees. For example, Plaintiffs have presented no evidence that contradicts GC Defendants position that they do not have the power to hire and fire Vision's employees. *See* Footnote 4 of this Motion. Nor have Plaintiffs set forth any evidence showing that GC Defendants supervised or controlled their work schedules. To the contrary, Plaintiffs recognized that the individuals who assigned them work were

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

Vision employees. In fact, even in the Named Plaintiffs' declarations, they testified that it was a Vision Drywall supervisor who assigned their work and working schedules. **Exhibit T,** Declaration of Oscar Almaraz ("Almaraz Dec."); **Exhibit U**, Declaration of Ismael Perez Cruz ("Perez Dec."). In their deposition testimony, Plaintiffs also confirm that Vision's supervisors assigned them their work and working schedules, set their rate of pay, and oversaw their work. *See* Footnotes 5 and 6 of this Motion. Indeed, Plaintiff Almaraz explicitly states that he worked under the supervision of Celestino Monterrosas, an individual he alleges worked for Vision Drywall, not for the general contractor whose project it was. **Exhibit T,** Almaraz Dec. Additionally, the representatives from all the GC Defendants testified that the GC Defendants did not exercise employer-like control (*e.g.*, issue disciplinary/performance actions to Vision's employees, maintain employment records of Vision's employees or provide tools/equipment to Vision's employees) over Plaintiffs as Vision employees and there is no evidence to contradict that testimony. *See* Footnotes 4-8 of this Motion; *see also* **Exhibit V**, Deposition of Burke Construction Group, Inc. ("Burke Dep.") at 42:4-7; **Exhibit W**, Deposition of Dunhill Homes ("Dunhill Dep.") at 34:4-11; **Exhibit X**, Deposition of Richmond American Homes of Nevada, Inc. ("Richmond Dep.") at 22:20-25; 23:1-2; **Exhibit Y**, Deposition of Desert Wind Homes of Nevada II, Inc. ("Desert Wind Dep.") at 26:24-25; 27:1-2**.**

Significantly, the majority of the Plaintiffs did not even take notice of the general contractor associated with a project, and the ones who did often failed to recall the correct general contractor associated with a project. *See* **Exhibit E**, Palacio Dep. at 62:1-6; 63:9-12; **Exhibit F**, de la Cruz Dep. at 61:24-25; 62:1; **Exhibit G**, Bravo Dep. at 51:11-25; 52:1-3; **Exhibit H**, Demha Dep. at 47:3-5; 79:17-23. When asked whether he knew what a general contractor was, one Plaintiff stated that he did not, and further clarified that he "worked for Vision." **Exhibit K**, Pamplona Dep. at 83:21-25; 84:1-8. Moreover, Named Plaintiff Almaraz even incorrectly alleged the "Meyer's" project was a Dunhill construction project; however, neither Dunhill nor any other GC Defendant in this action is associated with the "Meyers" project. **Exhibit T,** Almaraz Dec.; **Exhibit N**, Burke Dec. at ¶4; **Exhibit O**, Dunhill Dec. at ¶5; **Exhibit P**, Harmony Homes Dec. at ¶5; **Exhibit Q**, Richmond Dec. at ¶5; **Exhibit R**, KB Home Dec. at ¶5; **Exhibit S**, Desert Wind Dec. at ¶5. The fact that Plaintiffs are unable to even recall which general contractor is associated with the project that they worked on,

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

1  or worse, they incorrectly recall the which general contractor worked on a particular project,

2  diminishes their allegations that the GC Defendants were their joint employers.  As shown by their

3  own their own testimony, it is clear that Plaintiffs do not consider themselves employees of every

4  general contractor on whose projects they performed work.  Their testimony is understandable as the

5  GC Defendants did not do anything with regard to Plaintiffs that employers typically do.  Indeed,

6  GC Defendants only presence in Plaintiffs' working lives was a fleeting one, touching only the most

7  general parameters of Plaintiffs' working realities.

8       Plaintiffs have not set forth any evidence that would suggest that the GC Defendants are their

9  employers based on the "economic realities of the work relationship."   *Id.*; *see also*, *Gilbreath v.*

10  *Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991) ("The determination of whether an

11  employer-employee relationship exists does not depend on 'isolated factors but rather upon the

12  circumstances of the whole activity.'").  Plaintiffs have presented no evidence to indicate the GC

13  Defendants had the power to hire or fire Plaintiffs, control their actual work schedules, determine the

14  pay they received, or maintain any type of employment records for Plaintiffs.  To the contrary,

15  Plaintiffs' testimony shows that there is no employee-employer relationship.  To characterize the GC

16  Defendants as joint employers would completely contradict the allegations made in Plaintiffs' own

17  declarations and deposition testimony about the employment control allegedly exercised by a few

18  rogue crew chiefs who apparently had sole authority to dictate hours worked, to whom work would

19  be assigned, and whether or not work was done correctly.  Accordingly, Plaintiffs cannot prevail on

20  a claim against the GC Defendants under a "joint employer" theory of liability, indeed, their attempt

21  to do so is irresponsible and a blatant grab at gaining leverage in the litigation by misleading the

22  Court. *C.f. Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 330-31 (D. N.J. 2005) (plaintiffs

23  stated a claim under the FLSA where "they alleged that Wal-Mart exercised the power to hire and

24  fire plaintiffs, controlled their wages, hours and working conditions, as well as the quality standards

25  governing their work").  For these reasons, all claims against the GC Defendants which are based

26  upon a theory of joint employership must be dismissed.

27

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

11.

**B.  Named Plaintiffs Have Offered No Evidence To Support A *Prima Facie* Claim For Minimum Wage And Overtime Violations Pursuant To NRS § 608.150.**

To survive summary judgment with regard to Named Plaintiffs' claims pursuant to NRS § 608.150, Named Plaintiffs must set forth *specific facts* sufficient to demonstrate they worked more than 40 hours per week on one of the GC Defendant's construction projects, thereby accruing overtime wages, or that they were paid less than minimum wage for work performed on a particular GC Defendant's construction project.  As set forth by this Court, the liability of a general contractor pursuant to a claim under NRS § 608.150 is limited to the amount of unpaid wages which a plaintiff incurred while working on the particular general contractor's project and "Plaintiffs necessarily bear [the] burden of proof" in establishing the same.  *Artiaga v. Hutchins Drywall, Inc.*, 2007 U.S. Dist LEXIS 55554, *12 (D. Nev. July 27, 2007).  Named Plaintiffs simply have not proffered any *specific facts* to demonstrate that there is a genuine issue for trial with respect to this issue.

As this Court has noted, NRS § 608.150 is not a general guaranty statute for all of a subcontractors debts.  The provision itself unambiguously states, "every original contractor... shall assume and is liable for the indebtedness for labor incurred by any subcontractor or contractors acting under *by or for the original contractor* in performing any labor, construction or other work *included in the subject of the original contract*."  NRS § 608.150 (emphasis added).  Thus, by the plain meaning of the statute, Named Plaintiffs must demonstrate that they worked for subcontractor, Vision, and worked for more than 40 hours or were paid less than the minimum wage, in a workweek while performing labor included in the contract between Vision and Dunhill Homes; Vision and KB Home; and Vision and Desert Wind Homes; Vision and Richmond American Homes; Vision and Harmony Homes; Vision and Burke Construction, in order to recover overtime or minimum wages from the GC Defendants pursuant to Nevada law.  The GC Defendants are only potentially liable for unpaid wages incurred while the subcontractor's employee is performing work under the "original contract."  Thus, if a plaintiff has never worked on a particular GC Defendant's project for more than 40 hours in one workweek, and thus never accrued overtime wages on that contractor's project, or were never paid less than the minimum wage specifically for hours worked on the general contractor's project, then the GC Defendant would be entitled to complete summary

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

judgment for any overtime or minimum claim asserted against the subcontractor.

As noted above, this Court's decision in *Artiaga* establishes clearly what constitutes a *prima facie* case against the GC Defendants in this matter.  The GC Defendants' liability for overtime wages does not merely rest on whether Plaintiffs worked on each contractor's particular construction project at the beginning or at the end of the week, to survive the instant Motion for Summary Judgment, *Plaintiffs must proffer evidence that demonstrates they worked more than 40 hours on a contractor's construction project*.  Further, this point has been confirmed by this Court on more than one occasion.  As stated in the Court's decision in a similar case:

> Plaintiffs failed to offer any evidence to create a triable issue of material fact or otherwise support [plaintiff's] claim that he accrued overtime wages on [the general contractor's] construction project.  To avoid summary judgment, it is insufficient to assert merely that [plaintiff] has worked on [the general contractor's] construction project because [plaintiff] often worked on multiple construction projects, for various builders, in one workweek.  Without evidence demonstrating that [plaintiff] accrued overtime wages on [the general contractor's] project, [plaintiff's] claims cannot survive [the general contractor's] motion for summary judgment.

*Lemus v. Burnham Painting and Drywall Corporation*, 2:06-cv-01158-RCJ-PAL, 4:10-18 (D. Nev. August 11, 2008) (attached hereto as **Exhibit Z**).  Furthermore, in another similar case the Court determined that:

> [Plaintiffs] testified at deposition that they do not know whether they have ever worked on [the general contractor's] project.  Similarly, although [one plaintiff] believes he has worked on [one of the general contractor's projects], he does not know when, where or how long he worked.  Plaintiffs argue that their inability to recall whether they worked on [the general contractor's] Project or the name or location of such project is not fatal to their claim.  Plaintiffs argue that the trier-of-fact can infer liability on [the general contractor] because Plaintiffs testified that they often worked overtime hours for [the subcontractor].  This Court rejects [plaintiffs'] assertion.  *The issue before the Court on this Motion is whether there is sufficient evidence to create a triable issue of fact as to whether they worked overtime hours while employed on [one of the general contractor's projects] for which they have not been paid.* . . .  Plaintiffs failed to produce any evidence to support claims that [plaintiffs] have ever worked overtime hours on [one of the general contractor's projects].  Accordingly, Plaintiffs have failed to establish a *prima facie* case and have failed to show that there is a genuine issue for trial.

*Lopez v. Pete King Nevada Corporation*, 2:06-cv-01200-RCJ-LRL, 3:19-4:3 (D. Nev. April 10, 2008) (attached hereto as **Exhibit AA**) (emphasis added).

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

Somewhat more recently, in a case very similar to the one currently at bar, a Court of this district explained that "[f]or each plaintiff to maintain a claim against a particular original contractor defendant under §608.150, the plaintiffs must not only show that [the subcontractor] owes them a labor related debt, but must further show that [the subcontractor] accrued that particular debt on a project of the respective original contractor." *Buenaventura et al. v. Champion Drywall, Inc. of Nevada, et al.*, 2:10-cv-00377-LDG-RJJ, 9:4-8 (D. Nev. March 27, 2012), attached hereto as **Exhibit BB**. The Court went on to explain in that case that even if a plaintiff were able to show that he or she worked for a particular general contractor an entire week, such a showing does nothing to indicate that any unpaid wages were owed for that particular week. *Id.* at 9:7-10:1. Thus, in the *Buenaventura* case, while plaintiffs claimed to regularly work overtime, they also conceded that they worked less than 40 hours certain weeks and that they could not identify any particular week where they worked over or under 40 hours. *Id.* at 10:1-8. Thus, the Court explained, "[w]hile an inability to recall working more than forty hours in a particular week does not contradict a recollection of regularly working more than forty hours in a work week, the same lack of recall along with the concession that he did not work more than forty hours in some work weeks precludes an inference of working more than forty hours during any *particular* week." *Id.* at 10:9-13 (emphasis added).

Like the *Buenaventura*, *Lopez,* and *Lemus* cases, Named Plaintiffs have shown an inability to identify the work hours of any particular week. Thus, the evidence of general recollections about regularly working more than 40 hours when combined with admissions that there were weeks in which Named Plaintiffs' worked less than 40 hours a week cannot meet their burden of raising a just and reasonable inference of working overtime for a particular general contractor, nor the amount and extent of that work. *See id.* at 12:1-3

In this case, Named Plaintiffs have sued seven different general contractors; however, it is clear from their testimony that they are not even sure why they are suing all of the general contractors because they are not able to identify all of the general contractors – or the projects - that they worked for while employed by Vision. For example, when Named Plaintiff Oscar Almaraz was asked if he could recall the projects that he worked on while at Vision, he simply replied that, "There are many" and when specifically asked about the projects he worked on in a particular year, he

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

14.

replied "What do you want me to – sir, I've been working on many projects, and I cannot remember exactly in 2009 what I did exactly." **Exhibit B**, Almaraz Dep. at 102:15-22.   Similarly, Named Plaintiff Ismael Perez Cruz was also asked about the projects that he worked on but he could only remember a handful of them.

> **Q.**   We talked about the Vista Villa project, Monticello, [and] Positano. Can you recall the names of any other projects that you worked on with Vision?
> **A.**   No.

**Exhibit C**, Perez Dep. at 93:17-20.  *See also*, *id.* at 71:21-27; 72:1-25; 73:1-4 (Perez was unable to recall which general contractors that he performed work for with the exception of Richmond American Homes).    Not only were Named Plaintiffs unable to give an accurate account as to which particular general contractors' projects that they performed work on, but they also failed to provide testimony concerning the projects that they actually accrued overtime hours or minimum wage violations.   By way of illustration, Named Plaintiff Almaraz was asked if he could recall the year that he worked on a Richmond American Homes project, and in response, he said he could not even remember the year.   **Exhibit B**, Almaraz Dep. at 113:1-10; 140:11-14.   Similarly, Named Plaintiff Almaraz was unable to remember when he worked on other general contractors' projects:

> **Q.**   Can you recall specifically the weeks you worked for Dunhill Homes?
> **A.**   Like I said before, not one, two, or three times, many times we were switched.  So a week later, we were working for different projects.
> **Q.**   So you can't tell me any specific weeks you worked for Dunhill?
> **A.**   Not Precisely. . . .
> **Q.**   Can you recall any dates that you worked for Harmony Homes?
> **A.**   Harmony Homes?  I cannot remember if that is the construction of – you see, I get confused with this.  I cannot remember exactly, no. . . .
> **Q.**   You don't remember the dates you worked on the projects?
> **A.**   Like I said, I worked many – long time in Las Vegas, around Las Vegas on different projects.

**Exhibit B**, Almaraz Dep. at 133:23-25; 134:1-5; 140:11-25; 141:1-14.  Named Plaintiff Perez also was unable to identify when he worked on particular projects and for how long he worked on each project.

> **Q.**   Can you tell me what weeks you worked at Dunhill Homes project?
> **A.**   Dunhill?  I do not remember that.
> **Q.**   Okay.  Can you tell me what weeks you worked at Richmond American project? . . .
> **A.**   I do not remember, no.
> **Q.**   Okay.  Can you recall any weeks that you worked on a Harmony Homes project? They're another general contractor.
> **A.**   Harmony Homes?  No.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

| | |
|---|---|
| **Q.** | Can you recall any weeks that you performed work on a Desert Wind project, another general contractor? |
| **A.** | No. |
| **Q.** | What about on a KB Homes project? |
| **A.** | No neither.  Most of the tracts with Vision were Richmond. |

**Exhibit C**, Perez Dep. at 71:21-25; 72:1-17.  *See also*, *id.* at 66:12-25; 67:1-4 (Perez indicates he cannot recall when he worked on Harmony Point because he does not "pay attention to what dates [he worked] and things like that").  Interestingly, Perez was unable to give one single description of a week in which he worked over 40 hours:

| | |
|---|---|
| **Q.** | Can you tell me a week that you did work over 40 hours? |
| **A.** | There were many, but I cannot remember which weeks. |
| **Q.** | Can you just give me one week? |
| **A.** | Could have been – no, no, I cannot tell you. |

*Id.* at 88:13-23.

As the case law set forth above demonstrates, it is insufficient to hold a general contractor liable for unpaid labor debts based solely on Named Plaintiffs testimony that they are quite sure at some point during their employment they worked more than 40 hours in a week and that they were not paid minimum wage for some work.  *See* **Exhibit Z**, *Lemus*, 2:06-cv-01158-RCJ-PAL, 4:10-18.  Rather Named Plaintiffs must be able to show when and where these labor debts occurred.  *Id.* (holding that the plaintiff must have evidence that demonstrates a plaintiff accrued overtime wages on the specific general contractors project, in order to survive summary judgment); *see also* **Exhibit AA**, *Lopez,* 2:06-cv-01200-RCJ-LRL, 3:19-4:3 (dismissing plaintiffs' claims because the "Plaintiffs failed to produce any evidence to support claims that [plaintiffs] have ever worked overtime hours on [one of the general contractor's projects].").  In other words, Named Plaintiffs must have evidence that they worked on a specific general contractor's project where they accrued overtime hours or were not paid minimum wage.  Here, Named Plaintiffs fail to do so.  As shown by their testimony, Named Plaintiffs simply cannot remember when they allegedly worked more than 40 hours and when they did not, nor can they otherwise identify the weeks they believe Vision accrued labor related debt on their behalf.

Additionally, Named Plaintiffs testified that they often worked on different projects in the same week and even the same day.  When asked directly if it was common to work on more than one

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

general contractor's projects on the same day, Named Plaintiff Almaraz stated "[y]es, sometimes." **Exhibit B**, Almaraz Dep. at 106:6-8. When asked if it was common to work on more than one general contractor's projects within the same week, Named Plaintiff Almaraz indicated that it was. *Id.* at 113:19-21. *See also*, *id.* at 119:4-8 (Almaraz explained that he would work at Perry Plaza, a Burke Construction project, and then that same day go work on a residential project. As set forth in Burke's Declaration, **Exhibit N** at ¶3, Burke did not contract with Vision to work on any residential projects – just Perry Plaza, which is an apartment complex). Along the same lines, Named Plaintiff Perez also affirmed that it was common for him to work at different tracks throughout the week. **Exhibit C**, Perez Dep. at 74:1-7. Not only that, but Named Plaintiffs also provided testimony in support of their allegations against GC Defendants that related to projects that are not associated with any of GC Defendants. None of the GC Defendants have projects called the Meyers, Vista Villa, or Monticello, which are all projects that Named Plaintiffs testified that they worked on while employed by Vision and relate to their unpaid wage claims. *See* **Exhibit B**, Almaraz Dep. at 105:24-25; 109:21-23; 134:21-25 (discussing work performed at a project called Meyers); **Exhibit C**, Perez Dep. at 73:1-25; 74:1-4 (discussing work performed at projects called Vista Villa and Monticello). Even if Named Plaintiffs were able to show that there were weeks that they worked over 40 hours, without knowing the exact projects that they worked on, their testimony demonstrates that they cannot show that they accrued overtime hours on work performed on one particular general contractor's projects, nor can they identify which project that they were working on when they allegedly incurred minimum wage violations. Named Plaintiffs have offered absolutely no evidence that would show, or even tend to show, that unpaid wages were accrued on any of the GC Defendants' projects.

        To make matters more complicated for Named Plaintiffs, both of them testified that there were times when work was slow. For example, Named Plaintiff Almaraz testified that work was slow during the holidays. **Exhibit B**, Almaraz Dep. at 116:13-25. Named Plaintiff Perez testified that he worked less than five days a week approximately twice a month. **Exhibit C**, Perez Dep. at 70:13-25; 71:1-20. Furthermore, Named Plaintiff Perez testified that towards the end of him employment, he was not getting enough work. **Exhibit C**, Perez Dep. at 101:4-9.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

Named Plaintiffs allege that they were denied overtime wages and not paid minimum wages by Vision Drywall in violation of state law. They further allege that they accrued the unpaid wages while completing work on the GC Defendants construction projects, though their deposition testimony clearly indicates that such allegations are not based on any document, firsthand recollection, or actual knowledge. Named Plaintiffs allege that they worked on certain of GC Defendants' construction projects; however, they do not know how many hours they worked on those projects, nor when the work occurred. Thus, Named Plaintiffs are unable to state how much in alleged unpaid wages, if any, they accrued while completing work on the GC Defendants' projects during their tenure at Vision. In accordance with *Buenaventura*, *Lopez,* and *Lemus,* it is clear that Named Plaintiffs are unable to create a triable issue of fact with regard to how much, if any, overtime was accrued on the GC Defendants' construction projects, and therefore, failed to proffer sufficient evidence to support their claim that they accrued unpaid wages while completing work on one of the GC Defendants' construction projects and summary judgment is appropriate with regard to those claims as asserted against the GC Defendants pursuant to NRS § 608.150.

## VI. OPT-IN PLAINTIFFS, JAIME MAGALLANES-MUNOZ AND FRANCISCO CERVANTES, MUST BE DISMISSED FOR FAILURE TO FILE CONSENTS TO SUE.

The FLSA authorizes a plaintiff or plaintiffs to pursue a collective action for unpaid wages and unpaid overtime compensation "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The right to pursue such relief is limited, however, by the express provision in section 216(b) that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The Ninth Circuit has stated that "the FLSA claim of a plaintiff who has failed to file a written consent is subject to dismissal [w]ithout prejudice." *Rodriguez v. SGLC, Inc.*, 2012 U.S. Dist. LEXIS 164383, *76 (E.D. Cal. Nov. 15, 2012) (citing *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 756 (9th Cir. 1979)).

The Court set the deadline for filing consent forms to participate in this lawsuit for October 10, 2012. *See*, Docket No. 43. On October 10, 2012, Plaintiffs filed the Sixth Notice of Filing Opt-In Consent Forms, which represented that Carlos Santiago Ventura, Miguel Corona, Rolando

18.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

Fernandez, Cruz Rodriguez,  Raul de la Cruz Rodriguez, Jaime Magallanes-Munoz, Francisco Cervantes, Victor Saucedo-Ortego, Esteban Miranda Contreras, Eduardo Hernandez Contreras, Joel Solis, Isais Diaz, Jaime Barraza, Jose Garcia Cruz, German Bravo Martinez, and Eric Demha were filing their consent forms to participate in this collective action lawsuit.  *See* **Exhibit A**, Docket No. 63.  Upon review of the attached consents, there was not a consent form attached that was signed by either Jaime Magallanes-Munoz or Francisco Cervantes.[14]  To date, Jaime Magallanes-Munoz and Francisco Cervantes have not filed signed consent forms to participate in this collective action litigation as required by Section 216(b) under the FLSA.  Thus, neither Jaime Magallanes-Munoz nor Francisco Cervantes are proper parties to this collective action lawsuit and should be dismissed for failure to file their consent forms.

## VII.    CONCLUSION

For the reasons set forth herein, GC Defendants' Motion for Summary Judgment should be granted.

Dated:  March 21, 2013

Respectfully submitted,

RICK D. ROSKELLEY, ESQ.
CORY G. WALKER, ESQ.
KRISTINA ESCAMILLA GILMORE, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendants

---

[14] While there were two consent forms that merely were dated, neither of them were signed.  As a result, it is impossible to identify for whom the form was intended.  *See* pages 5 and 12 of Docket No. 63, **Exhibit A**.

19.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

1

**PROOF OF SERVICE**

2

      I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the

3

within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas,

4

Nevada, 89169. On March 21, 2013, I served the within document(s):

5

     **BURKE CONSTRUCTION  GROUP, INC.'S, RICHMOND AMERICAN HOMES OF**

6

    **NEVADA, INC.'S, HARMONY HOMES, INC.'S, KB HOME LAS VEGAS, INC.'S, KB**
    **HOME NEVADA, INC.'S, DESERT WIND HOMES OF NEVADA, II, INC.'S, AND LAS**

7

       **VEGAS LAND CONTRACTING, LLC DBA DUNHILL HOMES' MOTION FOR**
                            **SUMMARY JUDGMENT**

8

      ☒      By CM/ECF Filing – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced

9

                 document was electronically filed and served upon the parties listed below through
                 the Court's Case Management and Electronic Case Filing (CM/ECF) system:

10

11

Rachel Wilson
1701 Whitney Mesa Drive, Suite 105

12

Henderson, Nevada 89014

13

      I am readily familiar with the firm's practice of collection and processing correspondence for

14

mailing and for shipping via overnight delivery service.  Under that practice it would be deposited

15

with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight

16

delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in

17

the ordinary course of business.

18

      I declare under penalty of perjury that the foregoing is true and correct. Executed on March

19

21, 2013, at Las Vegas, Nevada.

20

21

                                    Kimberly Gregos

22

23

24

Firmwide:119079448.1 069936.1001

25

26

27

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

20.